UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| D.Z.J., a minor by her mother ANIKA J. STONE, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Cause No. 1:14-cv-904-WTL-TAB<br>)<br>) |
| CAROLYN W. COLVIN, Commissioner of the Social Security Administration, | )<br>)<br>) |
| Defendant. | )<br>) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff's mother, Anika J. Stone, requests judicial review of the final decision of Defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying her application on behalf of her minor daughter, D.Z.J., for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, now rules as follows.

### I. PROCEDURAL HISTORY

Stone filed an application for SSI on June 16, 2011, alleging that D.Z.J. became disabled on May 16, 2011, due to asthma and premature birth. The application was denied initially on August 1, 2011, and again upon reconsideration on November 18, 2011. Thereafter, D.Z.J.'s mother requested a hearing before an Administrative Law Judge ("ALJ"). A video hearing was held on November 20, 2012, before ALJ Gregory M. Hamel. On January 4, 2013, the ALJ issued a decision denying Stone's application for benefits. The Appeals Council upheld the ALJ's decision and denied a request for review on April 3, 2014. This action for judicial review ensued.

## II. APPLICABLE STANDARD

To be eligible for SSI, a claimant must meet the requirements of 42 U.S.C. § 423. Pursuant to that statute, "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The standard is a stringent one. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *See Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).

In determining whether a claimant under the age of eighteen is disabled, the Commissioner employs a three-step sequential analysis. 20 C.F.R. § 416.924(a). At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition. 20 C.F.R. § 416.924(b). At step two, if the claimant does not have a "severe" impairment or a combination of impairments that is "severe," she is not disabled. 20 C.F.R. § 416.924(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals any impairment that appears in the Listing of Impairments, codified at 20 C.F.R. pt. 404, subpt. P, App. 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the listings, and meets the twelve-month duration requirement, the claimant is deemed disabled. 20 C.F.R. § 416.906.

In determining whether an impairment functionally equals the listings, the ALJ must examine the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. §

416.926a(b)(1)(i)-(vi). The claimant's impairment or combination of impairments must result in "marked" limitations in two or more domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation is one that seriously interferes with the claimant's ability to sustain and complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that very seriously interferes with the claimant's ability to sustain and complete activities. 20 C.F.R. § 416.924a(e)(3)(i).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). Rather, the ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1177.

### III. THE ALJ'S DECISION

At step one, the ALJ found that D.Z.J. had not engaged in substantial gainful activity since June 16, 2011, the application date. At step two, the ALJ concluded that D.Z.J. had the following severe impairments: premature birth and asthma. At step three, the ALJ determined

that D.Z.J. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled a listed impairment. Accordingly, the ALJ concluded that D.Z.J. was not disabled from June 16, 2011, through the date of his decision.

## IV. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Stone's brief (Dkt. No. 16) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V. DISCUSSION

In her brief in support of her Complaint, Stone makes one argument—that substantial evidence fails to support the ALJ's determination that D.Z.J. was not disabled because her asthma did not meet, medically equal, or functionally equal Listing 103.03C2.[1]

Listing 103.03C2 requires the following:

> Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with . . .
>
> > 2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period[.]

20 C.F.R. Part 404, Subpt P, App. 1, § 103.03C. The ALJ found that D.Z.J.'s asthma did not meet this Listing, reasoning as follows:

> The claimant's asthma also does not meet a listing. The objective medical evidence fails to establish that the claimant has persistent low-grade wheezing between acute attacks or absence of extended symptom free periods requiring use of bronchodilators with persistent prolonged expiration with radiographic or other imaging techniques or short courses of corticosteroids, or a growth impairment, which would be necessary to meet or medically equal listing 103.03. In this case the claimant has had one or two asthma attacks based on the medical evidence, but the doctor's only advised her mother that [D.Z.J.] could use a nebulizer as needed. There is no evidence of any hospitalizations for asthma attacks, and this impairment seems to be controlled with treatment according to her doctor.

---

[1] While included in her heading, Stone makes no argument that D.Z.J.'s asthma functionally equaled the Listing.

4

R. at 14.  Stone argues that the ALJ "ignored the evidence proving her asthma with recurrent wheezing, treated with the steroid Prelone.  There is no requirement in the Listing that she was hospitalized for her asthma."  Pl.'s Br. at 5-6.  To begin, as the Commissioner correctly notes, the burden is on Stone to prove that D.Z.J.'s asthma meets or medically equals Listing 103.03C2.  *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) ("Ribaudo [the claimant] has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing.").  In her Reply, Stone fleshes out her argument as to why D.Z.J.'s asthma meets or medically equals the Listing.

First, Stone argues that the ALJ and the Commissioner incorrectly assert that hospitalization is required for an asthma attack to be considered an "attack" under the Listing.  Stone argues that this is not a requirement for the childhood listing for asthma.  Stone is incorrect.  Listing 103.03—the childhood listing for asthma—specifically notes that "attacks" are defined in Listing 3.00C—the adult listing for asthma:

> Attacks of asthma . . . are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy *in a hospital, emergency room or equivalent setting.*

20 C.F.R. Part 404, Subpt P, App. 1, § 3.00C.  Thus, it was not error for the ALJ and the Commissioner to note that D.Z.J. had not been hospitalized for her asthma attacks.

More to the point, however, is that the ALJ also found that D.Z.J. did not have persistent wheezing between attacks or an absence of extended symptom-free periods.  Indeed, there are numerous references in the Record where Stone reported to medical professionals that D.Z.J. was not wheezing. *See* R. at 432 (denies wheeze); 439 (denies wheeze); 447 (denies wheeze); 455 (denies wheeze); 460 (denies wheeze); 466 (denies wheezes); 484 ("Mom reports no wheezing for a few weeks now."); 495 (denies wheeze); 508 (denies wheeze).  There are also many

5

references to doctors and nurses noting no wheezing. *See* R. at 418 (no wheezes); 427 (no wheezes); 432 (no wheezes); 440 (no wheezes); 448 (no wheeze); 456 (no wheezes); 461 (no wheezes); 483 (no wheezes); 487 (no wheezing); 496 (no wheezes); 499 (no wheezes); 510 (no wheezes). In no way, therefore, could D.Z.J.'s wheezing be described as "persistent."

Stone also argues that the Commissioner "erroneously stated that the child was prescribed the steroid only three times. The evidence shows clearly, however, that she was prescribed it six times." Pl.'s Reply at 4. Indeed, Stone argues that D.Z.J. "was prescribed Prelone on 3-5-12 (R. 466, 471); on 3-7-12 (R. 478-479); on 3-12-12 (R. 482); 6-7-12 (R. 548-549); 6-14-12 (R. 527); 7-20-12 (R. 518). She was thus prescribed the steroid Prelone six times in a four months period." *Id*. Simply put, Stone is wrong.[2]

On March 5, 2012, D.Z.J. had a well-child office visit at Shadeland Family Care Center. Due to her wheezing, Flor Phillips, NP, prescribed her "a short course of Prelone." R. at 471. On March 7, 2012, Stone returned to the Shadeland Family Care Center. She reported that D.Z.J. "vomited up several of her doses" of Prelone; therefore, Dr. Deborah Demaree refilled her Prelone prescription. *Id*. at 479.

On March 12, 2012, D.Z.J. had a follow-up appointment with Flor Phillips, NP. It was noted that D.Z.J. was "still taking Prelone, missed a few doses." *Id*. at 482. It was also noted that her wheezing had improved; indeed, Stone "report[ed] no wheezing for a few days[.]" *Id*. at 484. Stone and D.Z.J. were sent home with instructions to "call if symptoms persist or worsen." *Id*. D.Z.J., however, did not receive a new prescription for Prelone.

---

[2] The Court cautions Plaintiff's counsel to be more prudent in reviewing the Record before making such assertions to the Court.

On June 7, 2012, D.Z.J. again saw Flor Phillips, NP for wheezing. Prelone was prescribed for five days. *Id*. at 549; *see also id*. at 518 (noting that Prelone was an "ordered medication" on 6/7/2012); *id*. at 527 (noting that Prelone was prescribed on 6/7/2012). On June 14, 2012, D.Z.J. had a follow-up visit with Flor Phillips, NP. Stone reported that D.Z.J.'s symptoms were "much better" with "no wheezing" and that D.Z.J. was "back to normal now." *Id*. at 530. No Prelone was prescribed as it was noted that her wheezing was "resolved." *Id*. at 531.

Thus, the evidence of record establishes that D.Z.J. was only prescribed the steroid Prelone three times; indeed, one prescription was a refill because D.Z.J. "vomited up" the previous prescription. *See* Def.'s Br. at 9 ("Contrary to Plaintiff's claim, the record shows that Claimant was prescribed Prelone [] for a short course of four days on March 5, 2012, for a short course of three days on March 7, 2012 because Plaintiff reported that Claimant vomited up several doses, and a short course of five days on June 7, 2012[.]"). As the Defendant notes, "[t]his hardly satisfies the frequency required under Listing 103.03C2." *Id*.

In no way has Stone met her burden of showing that D.Z.J.'s asthma met or medically equaled the Listing, and substantial evidence supports the ALJ's decision.

## VI. CONCLUSION

As set forth above, the ALJ in this case satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 5/13/15

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification